22CA1687 Peo v Fields 07-03-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1687
Arapahoe County District Court No. 13CR78
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Lyle Fields,

Defendant-Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meghan M. Morris, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Christopher Lyle Fields, appeals the denial of his Crim. P. 35(c) motion for postconviction relief.  We affirm in part and reverse in part, and we remand the case for further proceedings consistent with this opinion.

## I.     Background

¶ 2     Fields was charged in Douglas County with stalking and harassing his ex-girlfriend.  Several months later, while the Douglas County charges were pending, Fields shot at his ex-girlfriend through her car windshield, hitting her in the neck and chest.  She survived the encounter and identified Fields as the shooter.  Fields was apprehended, and he was charged in Arapahoe County with attempted first degree murder, retaliation against a victim, crime of violence (use of a deadly weapon), and violation of bail bond conditions.

¶ 3     Fields's cases were joined in Arapahoe County at his defense counsel's request.  The jury found Fields guilty on all counts.

¶ 4     On direct appeal, a division of this court affirmed the judgment of conviction but remanded the case to the trial court with instructions to impose concurrent sentences for the charges of attempted first degree murder and retaliation against a victim.

1

*People v. Fields*, (Colo. App. No. 14CA2130, Mar. 29, 2018) (not published pursuant to C.A.R. 35(e)).

¶ 5 Fields then filed a timely Crim. P. 35(c) motion alleging ineffective assistance of counsel. The postconviction court referred the petition to the public defender's office, and appointed counsel supplemented the claims. Four of the claims are at issue in this appeal: (1) counsel's alleged failure to engage in plea negotiations; (2) counsel's decision to adopt the motion for joinder filed by Fields's original attorney; (3) counsel's alleged failure to exclude bad act evidence; and (4) counsel's choice not to present Fields's psychological evaluation at sentencing.

¶ 6 The postconviction court denied all but one of these claims without a hearing, concluding that the others were "without merit as they d[id] not satisfy both prongs of a *Strickland* analysis." It granted a hearing on the psychological evaluation claim. After the hearing, the court also denied this claim.

## II. Denial of Hearing on Crim. P. 35(c) Claims

¶ 7 Fields argues the postconviction court erred by denying three of his claims of ineffective assistance of trial counsel without a hearing. We agree in part.

### A. Standard of Review and Applicable Law

¶ 8 Criminal defendants are constitutionally entitled to effective assistance from their counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. To prevail on an ineffective assistance claim, a defendant must show that (1) counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must prove each prong by a preponderance of the evidence. *People v. Duke*, 36 P.3d 149, 151 (Colo. App. 2001). If a defendant fails to prove *either* the performance or prejudice prong, the court may resolve the claim on that basis alone. *People v. Osorio*, 170 P.3d 796, 800 (Colo. App. 2007) ("If a court determines that counsel's performance was not constitutionally deficient, it need not consider the prejudice prong. Similarly, if a court determines that a defendant failed affirmatively to demonstrate prejudice, it may resolve the claim on that basis alone.") (citation omitted).

¶ 9 Under the performance prong, "a defendant must prove that counsel's representation 'fell below an objective standard of reasonableness.'" *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo.

3

2007) (quoting *Strickland*, 466 U.S. at 688). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

¶ 10    Under the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability means a 'probability sufficient to undermine confidence in the outcome.'" *Hagos v. People*, 2012 CO 63, ¶ 17 (quoting *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003)).

¶ 11    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Nozolino*, 2023 COA 39, ¶ 7. A Crim. P. 35(c) motion "may be denied without an evidentiary hearing only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino*, 69 P.3d at 77. A defendant's motion is without merit if

"the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the *Strickland* test." *Id.*

### B. Plea Negotiations

¶ 12    Fields argues his attorneys were ineffective for failing to engage in any plea negotiations with the prosecution.

¶ 13    When evaluating performance, the trial court must decide whether, "in light of the particular facts and circumstances of the case, defense counsel's failure to initiate plea negotiations fell below an objective standard of reasonableness." *People v. Sherman*, 172 P.3d 911, 913 (Colo. App. 2006).  And when evaluating prejudice, "a trial court should consider whether a defendant has shown a reasonable probability the prosecution would have made an offer, the defendant would have accepted it, and the trial court would have approved it." *Id.* at 914.

¶ 14    The People argue Fields failed to satisfy the performance prong because his assertion that counsel failed to pursue plea negotiations is belied by the record.  To support this argument, the People cite a memo from Fields's original defense counsel describing a visit with Fields during which he indicated that the prosecution

5

"had not given . . . any kind of offer" and that he had requested one. However, this memo was an attachment to the People's response to the Crim. P. 35(c) motion. Such attachments are not part of the files and record of the case, and "it is error for the court to render judgment on the pleadings based on factual allegations that are outside the existing record in the case." *People v. Smith*, 2017 COA 12, ¶ 19 n.2. Therefore, this memo, by itself, was insufficient evidence for the postconviction court to deny Fields's request for a hearing.

¶ 15 The People also argue that "defense counsel does not have a duty to initiate plea negotiations," *Sherman*, 172 P.3d at 913, and that "the postconviction court correctly rejected this claim [when it] conclude[d] that [Fields] '[wa]s not entitled to a favorable plea or lawyer who negotiates one successfully." While this premise is generally true, it does not support denying Fields's postconviction motion without a hearing for two reasons.

¶ 16 First, the division in *Sherman* acknowledged that the duty to initiate plea negotiations did not exist when the defendant "adamantly maintained his innocence before and after trial." *Id.* There is no indication in the record that Fields did so.

¶ 17    Second, while a defendant may not be entitled to a favorable plea, this does not negate the fact that the record before the postconviction court fails to show *any* evidence that defense counsel attempted to start negotiations. "[U]nder certain circumstances the failure to [initiate plea negotiations] could constitute ineffective assistance of counsel." *Id.* And when, as appears to be the case here, a defendant has not maintained their innocence, it could be argued that a reasonable attorney would attempt to initiate plea negotiations. *See Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."). The motion, files, and record do not clearly establish that Fields's allegations lack merit. *See Ardolino*, 69 P.3d at 77.

¶ 18    Moreover, there is no indication in the record that the prosecution would have been unwilling to make an offer, nor is there any indication that Fields would have been unwilling to accept an offer or that the court would have refused to approve any plea deal. Because the existing record does not establish that Fields's allegations, "even if proven true, would fail to establish one or the

7

other prong of the *Strickland* test," *id.*, Fields was entitled to a hearing on the issue.

## C. Joinder of Cases

¶ 19    Fields argues his trial counsel was ineffective for adopting prior counsel's decision to join Fields's Douglas County and Arapahoe County cases.

### 1. Additional Background

¶ 20    Fields's original defense counsel filed a motion to consolidate the two cases for a single trial in Arapahoe County.  Relying on Crim. P. 8(a)(2), which allows permissive joinder "if the offenses charged . . . are based on two or more acts or transactions connected together," counsel explained that given "the Prosecution['s] intent to offer the facts supporting the charges of the Douglas County case to an Arapahoe County jury and given the defenses' [sic] agreement with this intent there would be no reason not to simply have one trial on all issues."

¶ 21    After Fields's original counsel withdrew for personal reasons, his new defense counsel adopted the motion to consolidate the proceedings.  The trial court confirmed with Fields that he understood "that [his] attorneys are asking for [his] case to be

brought up from Douglas County and tried at the same time" and that Fields had a right to ask for a separate trial on the cases. Fields agreed that he wanted the cases to be consolidated. The court found Fields's decision "to waive or to consolidate the case [was] done freely, voluntarily and intelligently" and granted the motion.

¶ 22 In denying a hearing on this matter, the postconviction court found that while Fields's claim that his original counsel "motioned to join not for strategic reasons but in self-interest . . . , [if correct], ha[d] arguable merit and warrant[ed] a hearing," the court ultimately concluded that it was "highly likely [the motion to join the cases] was a strategy by counsel to confront both cases at once."

## 2. Analysis

¶ 23 Fields argues that defense counsel had "a duty to keep separate criminal cases separate, or to move to sever charges," because doing so was in his best interest and that the postconviction court's conclusion that joining the cases was a strategic choice was in error.

¶ 24    We need not address whether the joinder was strategic and, if so, whether such strategy was objectively unreasonable.  We conclude that Fields cannot establish that he was prejudiced by the joinder of these cases.  *See Osorio,* 170 P.3d at 800.

¶ 25    Fields argues that the joinder meant "the jury heard about the stalking allegations . . . even as he denied having the culpable mental state necessary to commit attempted first degree murder." But Fields also acknowledges that "the stalking conduct would have been admitted in the attempted murder trial, if at all, as CRE 404(b) evidence and Mr. Fields would have been entitled to a limiting instruction."  Reviewing this claim de novo, we agree with the postconviction court's ultimate conclusion that evidence of Fields's stalking was admissible regardless of whether these cases were joined because Fields's state of mind at the time of the shooting was central to the case, and evidence of his other acts would have been relevant to prove his intent.  *See* CRE 404(b).  And even if, as Fields argues, a limiting instruction would have been required, the court would have instructed the jury that they could consider evidence of Fields's stalking as evidence of intent.  *See* CRE 404(b)(2). Therefore, the limiting instruction Fields envisions would have had

incremental value at best because the jury would have considered the same evidence for the same purpose, regardless of whether the cases had been joined. *See People v. Corson*, 2016 CO 33, ¶¶ 38-41 (the defendant failed to show he was prejudiced, in part, by defense counsel's alleged deficient performance when a reasonable person would not have rejected a plea deal based on the incremental value of allegedly undisclosed evidence).

¶ 26    There is no indication that the joinder of these cases undermined confidence in the outcome. *See Hagos*, ¶ 17. The postconviction court thus did not err by denying Fields's request for a hearing on this claim of ineffective assistance of counsel.

### D.    Bad Act Evidence

¶ 27    Fields next argues his trial counsel was ineffective for failing to exclude prejudicial bad act evidence under CRE 404(b) and for not requesting a limiting instruction on the jury's use of that evidence.

### 1.    Additional Background

¶ 28    The prosecution filed the "People's Notice of Intent to Offer Evidence as Res Gestae, or, in the Alternative, Pursuant to C.R.E. 404(b)." The notice indicated that the prosecution intended to introduce (1) the facts of the stalking case in the attempted first

degree murder case; (2) the fact that Fields had been placed on pretrial services supervision in the stalking case; (3) evidence of statements Fields made to various parties regarding his intentions to kill his ex-girlfriend; and (4) evidence of the relationship between Fields and his ex-girlfriend.

¶ 29 Defense counsel stipulated to the admissibility of the first two proposed offers of evidence, objected to the prosecution's characterization of the evidence on the third but recognized that the evidence "[wa]s probably res gestae," and objected to the fourth offer based on lack of specificity. During trial, testimony from Fields's ex-girlfriend and her mother regarding his character was also admitted without objection from the defense.

¶ 30 In denying a hearing on this issue, the postconviction court found that counsel's concession to the admission of Fields's previous acts was "likely . . . strategic[]" and that counsel "either . . . believed the objection had little chance of being sustained or would cast the defense in an unfavorable light to the jury." The court also concluded that Fields's claim failed on the prejudice prong because "the objections would have been overruled," and, "[e]ven if the evidence had been excluded, none of

the evidence [wa]s so probative to suggest that the entire case hinged upon it."

## 2. Analysis

¶ 31    Fields argues that "the record did not reflect that there was a sound strategic reason for allowing bad act evidence or foregoing a limiting instruction." Again, we need not address the performance prong because Fields cannot demonstrate that he was entitled to a hearing on the prejudice prong. *See Osorio*, 170 P.3d at 800.

¶ 32    Fields argues defense counsel had a duty to "move to exclude inadmissible, prejudicial bad act evidence." As previously noted, Fields's state of mind at the time of the shooting was central to the case, and evidence of his other acts would have been relevant to prove his intent. *Supra* Part II.C.2; *see* CRE 404(b). We also agree with the postconviction court's conclusion that evidence of transactions between Fields and his ex-girlfriend would have been admissible as proof of a cyclical pattern of domestic abuse. *See* § 18-6-801.5(1)-(2), C.R.S. 2024. The motion, files, and record, therefore, clearly establish that counsel's failure to move to exclude this bad act evidence did not prejudice Fields. *See Ardolino*, 69 P.3d at 77.

¶ 33     Fields further contends counsel had a duty "to mitigate the prejudice of prior bad act evidence by requesting an instruction limiting the jury's use of that evidence." Once again, as previously noted, the limiting instruction would have had only incremental value at best, and the failure to request it is not sufficient to show prejudice. *Supra* Part II.C.2.

¶ 34     Finally, Fields contends that the postconviction court's analysis misconstrued the applicable prejudice standard when it stated that "none of the evidence is so probative [as] to suggest that the entire case hinged upon it." We agree that counsel's performance need only "undermine confidence" in the verdict. *Hagos*, ¶ 17 (citation omitted). But the evidence would have been admitted regardless of counsel's objections, and a limiting instruction would have done nothing more than tie the evidence to Fields's intent — which, in our view, is the only use the jury likely had for the evidence anyway. Therefore, we perceive no reasonable probability that counsel's handling of this evidence would have resulted in a different outcome. *See Strickland*, 466 U.S. at 694. Consequently, we discern no error in the denial of this claim without a hearing.

### III. Psychological Evaluation

¶ 35    Fields contends the postconviction court erred by denying his claim after a hearing on whether defense counsel was ineffective for failing to introduce evidence of Fields's psychological evaluation at sentencing.  We disagree.

#### A.    Standard of Review and Applicable Law

¶ 36    As noted, a defendant must prove by a preponderance of the evidence that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  We review a postconviction court's ruling on a Crim. P. 35(c) motion following an evidentiary hearing as a mixed question of fact and law.  *Dunlap*, 173 P.3d at 1063.  "[W]e defer to the court's findings of fact if they are supported by the record but review legal conclusions de novo."  *Id.*

#### B.    Additional Background

##### 1.    Sentencing Hearing

¶ 37    Fields underwent a psychological evaluation while his stalking and harassment charges were pending against him.  The evaluators produced a report summarizing their findings that indicated Fields was likely suffering from Asperger's syndrome and borderline

15

personality disorder. The evaluators also made specific recommendations for Fields to better address his emotional regulatory issues.

¶ 38    Fields told defense counsel that he did not want to use the report at trial. No discussion took place regarding whether to use the report during sentencing. Defense counsel did not offer the report to the court during the trial or sentencing hearing.

¶ 39    During Fields's sentencing hearing, defense counsel requested the court consider his untreated mental health issues, including his "borderline personality disorder that has been diagnosed as an adult . . . as well as Asperger's, which is well documented." Fields then delivered his personal statement, which the court described as addressing only how Fields felt he had been affected and lacking in any expression of remorse for his actions. The court found that "[t]here [wa]s no diagnosed Asperger's as far as the Court c[ould] tell," that "[t]here [wa]s not one mention . . . in the presentence report, of any mental health problems," and that "the defendant denied he ha[d] a mental health diagnosis." The court sentenced

Fields to a combined total of seventy-six years in the custody of the Department of Corrections.[1]

## 2. Crim. P. 35(c) Motion and Hearing

¶ 40 In granting a hearing on this claim the postconviction court acknowledged that, "[i]f counsel's failure to submit these records was not strategic, it may meet the first prong of *Strickland*." However, the court also noted that even if the performance prong was satisfied, Fields was likely not prejudiced by this deficiency because the outcome would have remained the same.

¶ 41 After the hearing, the court concluded that counsel's performance was not objectively unreasonable because "the Report, was not, by itself, helpful." In support of this conclusion, the court noted that several of the statements in the report "paint a picture of a person who is volatile, blames others, and is not remorseful." The court also found that the treatment recommendations in the report, all of which Fields failed to follow up on, would weigh against viewing the report as mitigation evidence.

---

[1] As noted, following Fields's direct appeal of his conviction, he was resentenced to concurrent sentences. Thus, his aggregate sentence is now forty-eight years.

¶ 42    Moreover, the postconviction court found that Fields was not prejudiced by the lack of the report.  It concluded that "while the Report may have provided context for Fields'[s] allocution, there is no evidence that the Report would have established Fields'[s] diminished culpability for the offenses or demonstrated that a lower sentence was otherwise warranted."  The court found this was further supported by a previous ruling on Fields's Crim. P 35(b) motion, wherein a judge opted not to reduce Fields's sentencing after receiving the full report.

### C.    Analysis

¶ 43    We agree with the postconviction court that Fields has failed to prove by a preponderance of the evidence how counsel's decision not to provide the psychological report prejudiced him.

¶ 44    First, the court's sentencing decision rested on Fields's continued insistence, both during trial and through his personal statement, that he did not suffer from a mental health disorder. The report would not have changed the fact that Fields refused to personally acknowledge the existence of any mental health issues.

¶ 45    Second, even if the report explained Fields's allocution, the postconviction court concluded that Fields was not prejudiced

based, in part, on the results of a prior Crim. P. 35(b) resentencing hearing during which the judge had access to the full report and still opted to impose the same sentence. The court identified evidence that "Fields had engaged in an escalating pattern of harassment against the victim and her family," and, regardless of its timely presentation, the report alone did not raise a reasonable probability — that is, a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different. *See Hagos*, ¶ 17.

¶ 46     Because Fields failed to establish prejudice under *Strickland*, the postconviction court did not err by denying this ineffective assistance of trial counsel claim after a hearing. *See Osorio*, 170 P.3d at 800.

## IV.   Disposition

¶ 47     Because Fields alleged sufficient facts to warrant a hearing on his claim of ineffective assistance related to plea bargaining, we reverse the postconviction court's order insofar as it denied that claim, and we remand for a hearing solely on that claim. The order is affirmed in all other respects.

JUDGE YUN and JUDGE SULLIVAN concur.